78 P.3d 371

In the Matter of Constance Malmin, Attorney at Law.

IDAHO STATE BAR, Plaintiff–Respondent,

v.

Constance MALMIN, Defendant–Appellant.

No. 28364.

Supreme Court of Idaho, Boise, January 2003 Term.

April 3, 2003.

Grober, Gadda & Hart, Homedale, for appellant. Dan C. Grober argued.

Idaho State Bar, Boise, for respondent. Julia A. Crossland argued.

TROUT, Chief Justice.

This is an attorney discipline case in which the attorney seeks review by this Court pursuant to Idaho Bar Commission Rule 511(*l*)(5). Following a hearing before a three-member hearing committee of the Idaho State Bar Professional Conduct Board (PCB), the PCB found the attorney guilty of three counts of attorney misconduct and recommended sanctions. This Court agrees and imposes the recommended sanctions.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Constance Malmin (Malmin) was charged with three disciplinary offenses based on her client dealings with Vicky J. Hill (Hill). The following factual background is taken largely from the PCB Findings of Fact and Conclusions of Law.

On October 8, 1998, Hill consulted Malmin regarding a matter related to Hill's 1997 divorce. Hill sought money owed to her from her ex-husband. Malmin suggested the best course of action would be to prepare a stipulation in which the ex-husband agreed to reimburse Hill and, if he failed to perform as promised, Malmin would proceed with filing a money judgment against the ex-husband and then garnish his wages. Immediately following this initial meeting, Hill made her first payment of $45.00 and signed a retainer agreement agreeing to pay Malmin $85.00 per hour for representation in the matter. The retainer agreement provided that Hill was responsible for paying all costs and filing fees.

Two days later, on October 10, 1998, Hill returned to Malmin's office and Malmin drafted certain legal documents on Hill's be-

**306**

half (the "money judgment papers"). In addition, Malmin drafted a letter to the ex-husband enclosing the documents and informing him these would be filed if he refused to pay Hill. At this second meeting, Hill paid Malmin an additional $145.00.

On October 24, 1998, Hill paid Malmin $75.00 by check with a notation stating, "court fee," and on November 3, 1998, Malmin drafted a check from her general office account for a $47.00 court filing fee for Hill.

Hill's ex-husband eventually responded to the October 10, 1998, letter and on November 11, 1998, signed the stipulation agreeing to reimburse Hill by monthly payments of $150 beginning January 1, 1999. Nonetheless, the ex-husband failed to pay as agreed, and, after waiting nearly two months for payment, Hill decided to ask Malmin to proceed with obtaining a money judgment.

According to Hill, she first contacted Malmin by letter sent sometime around February 20, 1999, requesting Malmin file the money judgment papers and enclosing a final payment for attorney fees in the amount of $183.61. On February 26, 1999, Hill called Malmin's office and Malmin's assistant (her sister, Margaret Oliver (Oliver)) informed Hill the check and letter had been received but the money judgment papers had not yet been filed. On March 2, 1999, Hill called Malmin again and Oliver informed her the money judgment papers had been filed but had not yet been signed and returned by the court. Thereafter, over the course of approximately six weeks, Hill testified that she called Malmin's office at least ten more times and was told repeatedly by Malmin and Oliver that the papers had been filed, the court had not yet returned the papers, and that "no news was good news." In addition to the telephone calls in this time period, on March 11, 1999, Hill wrote a check for $47.00 with the notation, "filing fee."

On April 13, 1999, concerned about the status of her case and the large number of unreturned phone calls, Hill contacted the district court directly and discovered neither the stipulation nor the money judgment papers had been filed. Hill immediately left her place of work to discuss the matter with Malmin in person. According to Hill, Malmin apologized for the delay, admitted she had neglected to file the stipulation and money judgment papers. Malmin proceeded to file the papers that same day, and the court entered an order for money judgment three days later on April 16, 1999.

Hill also testified that when she spoke with Malmin on April 13, 1999, she requested a refund, which Malmin refused. However, Malmin stated she would waive the fee for drafting the garnishment papers. In addition, Hill testified that she requested copies of her previous billing statements and Malmin agreed to send them by mail.

On April 20, 1999, Hill went to Malmin's office to complete the wage garnishment documents and thereafter received a bill from Malmin for preparation of the wage garnishment package. Hill then phoned Malmin's office asking the fee be waived as promised and again requested copies of her billing statements. As Hill testified, Oliver told Hill to ignore the current fee and then explained she was unable to provide Hill with billing statements, because they were deleted from the computer each month.

In July 1999, Hill initiated the instant proceedings by filing a grievance against Malmin with the ISB. In order to chronicle her many contacts with Malmin's office for the purposes of the ISB investigation, Hill referred to two day-timers, one from 1998 and the other from 1999, in addition to her independent recollection of the events still fresh in her memory. The 1999 day-timer was subsequently lost.

In the course of investigating Hill's complaint, the ISB contacted Malmin a number of times and asked Malmin to address Hill's accusations. In response, Malmin provided the ISB with two alternative explanations for the delay. First, on January 3, 2000, in a written response to a request for information from the ISB, Malmin explained the delay was the fault of the ex-husband, who was not forthcoming when asked to sign the stipulation and did not sign the stipulation until March 1999. Later, Malmin recanted the first explanation and, in a letter to the ISB dated August 19, 2000, explained the reason for the delay was the district court failed to

process the check Malmin sent with the documents to the court in November.

Following the investigation, the ISB requested and received approval from the Board of Bar Commissioners to file formal charges against Malmin and subsequently filed a three-count complaint against Malmin. Count One alleged Malmin violated Idaho Rules of Professional Conduct (I.R.P.C.) 1.3, regarding diligence; 1.4, regarding communication; and 1.5(f), regarding fees; by failing to file certain money judgment papers on behalf of Hill, failing to return Hill's telephone calls and failing to provide an accounting upon Hill's request. Count Two alleged Malmin violated I.R.P.C. 8.4(c), regarding dishonesty, when Malmin informed Hill the money judgment papers had been filed with the clerk of the court when, in fact, they had not been filed. Count Three alleged Malmin violated I.R.P.C. 8.1(a) and 8.4(c) by making false statements to Bar counsel's office in its investigation of the matter.

On May 9, 2001, in her answer to the ISB's formal complaint, Malmin provided a third explanation for the delay. This time, Malmin explained the delay was Hill's fault, who had failed to pay the filing fee required to file the money judgment papers.

On October 26, 2001, the PCB hearing committee took testimony and evidence. At the hearing, Malmin elaborated on her third explanation for the delay, explaining she waited to file the money judgment papers, because Hill had a zero balance on her account in February and Malmin, as a matter of office policy, does not front filing fees for her clients. According to Malmin, she waited for Hill's check dated March 11, 1999, to clear before filing the papers.

At the conclusion of the hearing, one of the hearing committee members asked if there had been any evidence presented as to any disciplinary violations, to which ISB counsel responded: "Yes, she has." Malmin's attorney then objected to the question. In response, the chairman of the hearing committee indicated the committee would not consider such information unless they found a violation had occurred. Then, the parties would have the opportunity to brief the committee as to whether the previous discipline

should be considered for the purposes of fashioning an appropriate sanction.

On November 21, 2001, the hearing committee issued its Findings of Fact and Conclusions of Law determining Malmin had violated the rules as alleged in the three-count complaint. Subsequently, on February 7, 2002, following additional briefing by the parties, the hearing committee issued its Sanction Recommendation, recommending the Supreme Court (1) suspend Malmin from the practice of law for six months; (2) place Malmin on probation for two years; (3) require Malmin to sit for and pass the Multistate Professional Responsibility Examination; and (4) order Malmin to reimburse the ISB for its costs incurred in prosecuting the matter.

On March 20, 2002, the transcript and record of the PCB was filed with this Court, to which Malmin filed a Notice of Objection pursuant to Idaho Bar Commission Rule 511(n).

## II.

### STANDARD OF REVIEW

When a PCB hearing committee recommends public censure, suspension, or disbarment, the hearing committee's report, containing findings of fact and recommendations, together with the entire record of the proceeding, are sent to the Supreme Court. Idaho Bar Commission Rule 511($l$)(5). If either party disagrees with the findings or recommendations, they may file a Notice of Objection. Rule 511(n). On appeal, this Court conducts an independent examination of the record to determine whether the evidence clearly and convincingly supports the hearing committee's findings and recommendations. *Matter of Jenkins,* 120 Idaho 379, 385, 816 P.2d 335, 341 (1991); *Idaho State Bar v. Warrick,* 137 Idaho 86, 90, 44 P.3d 1141, 1145 (2002). The findings of the hearing committee are entitled to great weight, and the burden is on the petitioner to show the evidence does not support the hearing committee's findings. *Id.* Nonetheless, the ultimate responsibility for assessing the facts

and ordering the sanctions to be imposed rests with this Court. *Id.*

### III.

### DISCUSSION

This Court determines the hearing committee's findings that Malmin violated Idaho Rules of Professional Conduct 1.3, 1.4, 1.5(f), 8.1(a), and 8.4(c), are supported by clear and convincing evidence. While this evidence primarily comes from the testimony of Hill, and this testimony was in conflict with that of Malmin, the hearing committee determined Malmin was not a credible witness and, therefore, her testimony lacked merit. Further, the hearing committee was not tainted by knowledge that Malmin had previously been disciplined. The recommended sanction, in light of this record, appears reasonable.

### A. *There is Clear and Convincing Evidence that Malmin Violated the Rules of Professional Conduct.*

The hearing committee found that Malmin had committed all three allegations of misconduct set forth in the ISB complaint. The first count relates to Malmin's failure to act, also referred to as "client neglect," which the hearing committee found violated I.R.P.C. 1.3 "Diligence," Rule 1.4 "Communication," and Rule 1.5(f) "Failure to Provide an Accounting of Fees and Costs." The second count relates to Malmin's deliberate attempts to mislead Hill, which the hearing committee concluded constituted conduct involving dishonesty, fraud, deceit, or misrepresentation in violation of I.R.P.C. 8.4(c). The third count relates to Malmin's deliberate attempts to mislead the ISB, which the hearing committee concluded violated I.R.P.C. 8.1(a) for false statements to Bar counsel in a disciplinary matter and I.R.P.C. 8.4(c) for conduct involving dishonesty, fraud, deceit, or misrepresentation.

On appeal, Malmin takes issue with the findings of fact generally, which she claims are not based on articulated facts, and the conclusions of law, which she claims do not demonstrate the hearing committee made a reasoned application of the law to the facts, nor do they show whether the hearing committee applied the clear and convincing standard of proof. As discussed below, Malmin's arguments are unpersuasive.

1. *The Hearing Committee Correctly Applied the Clear and Convincing Standard of Evidence.*

As a preliminary matter, the hearing committee correctly applied the proper standard of proof. It stated in the "Recommendation" section at the conclusion of its Findings of Fact and Conclusions of Law, "The Professional Conduct Board, having found, *by clear and convincing evidence,* that the defendant has violated the Idaho Rules of Professional Conduct 1.3, 1.4, 1.5(f), 8.4(c), and 8.1(a) ..." (emphasis added). Moreover, irrespective of the hearing committee's findings, this Court conducts an independent review of the evidence in the record and, based on this review, concludes that there is clear and convincing evidence of the misconduct alleged.

2. *Count One: Neglect/ Communication/ Failure to Provide an Accounting.*

The hearing committee concluded Malmin violated three separate Rules of Professional Conduct by failing to act in the course of her representation of Hill. Based largely on Hill's testimony, there is clear and convincing support for the hearing committee's findings.

■ First, the hearing committee concluded Malmin violated I.R.P.C. 1.3 by failing to "act with reasonable diligence and promptness in representing a client." The evidence in support of this finding comes primarily from Hill, who testified she first requested Malmin to file the documents by letter dated February 20, 1999. In addition, Hill testified that she made twelve follow-up telephone calls to Malmin's office from February 26, 1999, until April 13, 1999, when Hill discovered the papers had not been filed. Despite Hill's repeated attempts to reach Malmin, Malmin never returned a telephone call.

While Malmin provided testimony in conflict with that of Hill, the hearing committee resolved this conflict in favor of Hill, apparently finding Hill to be a more credible wit-

ness.[1] Thus, the ISB offered clear and convincing evidence that Malmin failed to "act with reasonable diligence and promptness in representing a client." Although a six-week delay before completing a requested action is not a hard and fast rule demonstrating lack of diligence, under circumstances where, as here, the lawyer only has to file documents already prepared and the client calls repeatedly for a status update, the lawyer has failed to meet professional standards.

■ The second violation found by the hearing committee in relation to Count One was that Malmin violated I.R.P.C. 1.4 "Communication," by failing to "keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information." The evidence and findings in support of the violation of Rule 1.3 also support this violation of Rule 1.4. In addition to those findings, the hearing committee also found Malmin failed to provide Hill with requested information and actually misled Hill by telling her the papers had been filed when, in fact, they had not. This evidence was sufficient to provide a basis for determining that Malmin violated the Rules of Professional Conduct by failing to "keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

■ The third violation of the rules the Hearing Committee found in relation to Count One was that Malmin violated I.R.P.C. 1.5(f) "by failing, upon request, to provide, without charge, an accounting for fees and costs claimed or previously collected." The hearing committee determined that Hill had requested billing records on April 13, 1999, and again on April 20, 1999; however, "[a]s of the date of the hearing in this matter, Ms. Hill had still not received a complete accounting of the fees incurred in relation to the defendant's representation of her in these matters, pursuant to her reasonable requests."

In support of these findings was the testimony of Hill who testified that she requested an accounting of fees on April 13, 1999, and again sometime after April 20, 1999. Again, while Malmin and Oliver provided testimony in conflict with that of Hill, Hill's testimony alone provides sufficient evidence supporting the hearing committee's findings. Further, despite Malmin and Oliver's testimony as to office policy and their alleged willingness to respond to a client's request for billing information, they were unable to produce for the ISB Hill's monthly statements for the months of December 1998 and March 1999, supporting the conclusion that Malmin failed to provide an accounting upon request.

3. *Count Two: Knowingly Making False Statements to a Client.*

■ The hearing committee determined that Malmin violated I.R.P.C. 8.4(c), which provides, "[i]t is professional misconduct for a lawyer to ... engage in conduct involving dishonesty, fraud, deceit or misrepresentation." Such a conclusion requires proof by clear and convincing evidence of both a misrepresentation, as well as the intent or purpose to deceive. *Warner v. Stewart*, 129 Idaho 588, 595, 930 P.2d 1030, 1037 (1997).

In support of this conclusion, the hearing committee found as follows, "[B]etween March 2, 1999, and April 13, 1999, the defendant either personally, or through her staff, made knowingly false statements to Ms. Hill regarding the filing of the money judgment documents." This finding was based on the testimony of Hill as to various telephone conversations with Malmin, as well as an independent determination regarding the credibility and character of Malmin. It is also based on a clear inference that Malmin purposefully deceived Hill by telling her papers had been filed when Malmin clearly knew they had not been. Because intent is a state of mind, this evidence alone is sufficiently clear and convincing to support the

---

1. While this Court defers to the hearing committee's ability to evaluate the character of the witnesses appearing before it, its character assessment here is buttressed by the record, which demonstrates that Malmin offered three varying stories to account for her delay in acting upon request of a client. Moreover, even if Malmin's ultimate account for the delay was true, she still delayed for almost three weeks after receiving the long-awaited check, until she ultimately filed the papers, and even then, only after being confronted by her client.

finding that Malmin knowingly deceived Hill in violation of I.R.P.C. 8.4(c).

#### 4. *Count Three: Knowingly Making False Statements to the Bar.*

■ The hearing committee concluded that Malmin knowingly misled the ISB in its investigation of the instant matter in violation of Rule 8.1(a), providing a lawyer shall not "knowingly make a false statement of material fact" in connection with a disciplinary proceeding and Rule 8.4(c) providing a lawyer shall not "engage in conduct involving dishonesty, fraud, deceit or misrepresentation." Both violations require a showing of intent.

In support of this conclusion, the hearing committee found that Malmin had provided the ISB three varying accounts for the delay in filing the money judgment papers over the course of the investigation, each of which was an incorrect statement of the facts. The hearing committee further determined "the defendant knew at the time the statements were made to the Bar ... that said statements were not true."

Evidence in support of this claim of misconduct is almost entirely documentary. Malmin's first explanation for the delay in filing was provided to the ISB on January 3, 2000, in response to the ISB's second request for information. In this letter, Malmin explained the delay was the fault of the ex-husband, who was not forthcoming when asked to sign the stipulation and did not sign the stipulation until March 1999. This statement was incorrect, since the ex-husband actually signed the stipulation on November 11, 1998, as the document states. Malmin attempted to explain this misrepresentation as an honest mistake. She testified that, in responding to the ISB complaint, she made a cursory review of Hill's file and noted her copy of the stipulation was dated March 1999. According to Malmin, she later determined the mistaken date resulted from the fact her computer dates certain documents when they are printed. Apparently, after Hill called and asked that the papers be filed, Malmin removed the signed stipulation to file with the court and replaced it with a new copy printed directly from her computer. At the time of printing, the computer "burned in" the date. Thus, when Malmin examined the file to answer the ISB's request for information, she found the incorrectly dated stipulation and believed the delay was the fault of the ex-husband.

Malmin's second explanation for the delay is found in a letter to the ISB dated August 19, 2000. This second explanation provides the reason for the delay was that the district court failed to process the check Malmin sent with the documents to the court in November. As Malmin then explained, once she discovered the documents had not been filed, she issued a replacement check for the filing fee and then resubmitted the documents to the court. This statement was false because the documents had never been submitted to the district court.

Malmin testified this second misstatement was also an honest mistake. After discovering the stipulation had actually been signed in November, as opposed to March as she first reported, she went back to the file and found she had written out a check for $47.00 in November. Based on the date of this check, Malmin assumed she had sent it, along with the documents, to the court and the court had mishandled it from there.

Malmin's third explanation for the delay was provided on May 9, 2001, in her answer to the ISB's formal complaint. This time, Malmin explained the delay was the fault of Hill, who had failed to pay the filing fee required to file the money judgment papers. At the hearing on October 26, 2001, Malmin further elaborated on this explanation, stating that Hill did not pay for the filing fee until March 11, 1999, and, once Hill's check had been received, Malmin acted according to office policy and waited a week until the check cleared before filing the documents.

The hearing committee determined these statements were also not true, since Hill had provided Malmin with a check in the amount of $75.00 for "court fees" on October 24, 1998, with the understanding that it was to be used for the filing fees in this matter. Further, while Hill provided a second check for filing fees on March 11, 1999, the papers were not filed until April 13, 1999, nearly a

month following receipt of the check. Therefore, the hearing committee determined "the payment or nonpayment of the filing fee was not, in fact, the reason for the delay."

The hearing committee determined Malmin made the above misstatements of fact knowing they were not true and did so, rather than admit to the ISB that she had engaged in misconduct. This evidence provides clear and convincing support for the conclusion that Malmin knowingly made false statements to the ISB in violation of I.R.P.C. 8.1(a) and 8.4(c).

In sum, this Court affirms the hearing committee's findings of fact and ultimate conclusion that Malmin violated Idaho Rules of Professional Conduct 1.3, 1.4, 1.5(f), 8.1(a), and 8.4(c). While determining the credibility of a witness is within the unique purview of the trier of fact, it is important to note that an independent review of the record, especially the documents submitted to the ISB in the course of its investigation of Malmin, without the benefit of judging Malmin's demeanor, paints a similar picture of a lawyer who violated the rules first, because she was unable to keep her high-volume law practice under proper control, and later by trying to actively conceal the truth rather than admit that she had failed to perform up to the standards of the legal profession.

**B. The Hearing Was Not Impermissibly Tainted by the Hearing Committee's Knowledge that Malmin had a Prior Discipline Record.**

■ At the conclusion of the proceedings before the hearing committee to determine fault, a committee member asked if there had been any evidence presented as to any disciplinary violations, to which Bar counsel responded: "Yes, she has." No other information regarding the previous disciplinary action was given. Malmin argues the hearing committee's knowledge of her previous discipline tainted the entire proceeding to determine fault. Therefore, Malmin argues she deserves a second hearing before a new hearing committee.

Malmin's argument is unpersuasive. It is common procedure for a hearing committee to hear all evidence at one time, including evidence which may bear only on the appropriate sanction in the event a violation is found. Despite that practice, the chairman of the hearing committee in the instant case expressed concern about providing Malmin a fair hearing and determined it would be best if the hearing committee did not know any details surrounding the previous discipline. Further, the chairman explained, in determining fault first, the committee would engage in "a deliberation that is free of any consideration of any prior disciplinary conduct."

Moreover, the ultimate determination about ethical violations is left to this Court, not the hearing committee. The findings of fact in this case were based on clear and convincing evidence in the record, sufficient to uphold the hearing committee's conclusions, despite this knowledge. Thus, there was no error in this particular instance simply because the hearing committee had some information about Malmin's previous discipline record.

**C. The Recommended Sanction Is Appropriate.**

■ The hearing committee ultimately fashioned a four-part sanction for Malmin, recommending that she be: (1) suspended from practicing law for six months, (2) on probation for two years, (3) required to sit for and pass the Multi-state Professional Responsibility Exam (MPRE), and (4) be required to pay the ISB for costs incurred in prosecuting this case. Malmin does not address the appropriateness of this sanction and in fact, at oral argument, Malmin's counsel conceded that the sanctions recommended were appropriate if the hearing committee's findings were found to be supported by clear and convincing evidence. Nonetheless, because the ultimate determination of the appropriate sanction is left to this Court, we review the record and findings independently.

In crafting the recommended sanction, the hearing committee considered the *ABA Standards for Imposing Lawyer Sanctions* (1991 Ed.) and certain identified aggravating factors. These aggravating factors include:

(1) Previous discipline for violating I.R.P.C. 3.3(d) (lack of candor toward a tribunal). While this private reprimand was issued nine years ago and is sufficiently remote in time so as to not indicate a continuing pattern of behavior, it is relevant because the prior discipline had to do with lack of candor.

(2) In both the previous disciplinary action, as well as the present case, Malmin has failed to admit wrongdoing and blames others to deflect the blame.

(3) Malmin proffered knowingly false testimony under oath before the hearing committee.

(4) Malmin failed to demonstrate to the committee an appreciation of the serious nature of her misconduct.

The hearing committee also considered the fact that Malmin did not present any mitigating factors to the committee and the mitigating factors set forth in Section 9 of *The ABA Standards for Imposing Lawyer Sanctions.*

This Court agrees with and adopts the hearing committee's sanction recommendation. First, the six-month suspension is an appropriate response to the fact that Malmin made knowingly false statements to her client, the ISB counsel's office, and the hearing committee; she has been reprimanded in the past for lack of candor; and has not shown sufficient understanding of the gravity of these offenses. Only by suspending Malmin's license to practice law can this Court properly convey to Malmin the importance of candor and the severity of her offenses.

Second, following the six-month suspension, a two year probation is necessary in order for this Court to make certain Malmin has learned from her mistakes and has her practice under appropriate control. Third, requiring Malmin to take the MPRE is an appropriate sanction, because the test should help Malmin understand the ethical standards to which she is held. Finally, ordering Malmin to shoulder the burden of the ISB's costs incurred in prosecuting this case is an appropriate penalty under the circumstances, because Malmin could have avoided the necessity of this disciplinary proceeding if she had only been honest with her client and the ISB from the beginning.

## IV.

## CONCLUSION

In conclusion, this Court adopts the hearing committee's Findings of Fact and Conclusions of Law, as well as the Sanction Recommendation. There is clear and convincing evidence in support of the Findings and Conclusions, and an independent review of the record demonstrates Malmin violated the Rules of Professional Conduct by failing to demonstrate reasonable diligence, failing to communicate properly with a client, failing to provide an accounting upon request, making knowingly false statements to a client, and making knowingly false statements to the Idaho State Bar. Further, given Malmin's prior lack of candor and failure to demonstrate an appropriate understanding of the gravity of her various offenses, the sanctions recommended under these circumstances are reasonable.

Justices SCHROEDER, WALTERS, KIDWELL and EISMANN, concur.