108 P.3d 362 (2005)
141 Idaho 215
In the Matter of Shari A. DODGE, Attorney at Law.
Idaho State Bar, Plaintiff,
v.
Shari A. Dodge, Defendant.
No. 30498.
Supreme Court of Idaho, Boise, November 2004 Term.
February 22, 2005.
*363 Risch, Goss & Insinger, Boise, for Dodge. James E. Risch argued.
*364 Bradley G. Andrews, Boise, for Idaho State Bar. Julia A. Crossland argued.
BURDICK, Justice.
Shari A. Dodge, former Canyon County Deputy Prosecuting Attorney, appeals a ruling by a hearing committee of the Professional Conduct Board of the Idaho State Bar recommending that she be publicly reprimanded for making a false statement of material fact to a tribunal in violation of I.R.P.C. 3.3(a)(1), and for failing to disclose known material facts to a tribunal in an ex parte hearing in violation of I.R.P.C. 3.3(d). We affirm the hearing committee with respect to Dodge's violation of I.R.P.C. 3.3(a)(1), but reverse the finding that Dodge's statement violated I.R.P.C. 3.3(d).

FACTUAL AND PROCEDURAL BACKGROUND
This case arises out of a probable cause hearing before a magistrate judge. The purpose of that hearing was to determine probable cause for a crime and whether a warrant with an appearance bond for David Ford should issue. Ford had been in an ongoing dispute with Susan Sherman, an adjoining property owner, concerning the use of irrigation water. Ford asserted Sherman improperly used the water system by neglecting to divert the water after irrigating, resulting in repeated flooding of his property. Ford directed an employee to weld the headgate shut to prevent Sherman from accessing irrigation water. Sherman reported the incident to police, and had a friend break the weld. A few days later, Ford again instructed an employee to weld the headgate shut, and Sherman again notified the police.
Because of Ford's conduct in welding the headgate shut, the Canyon County Prosecutor's office filed a criminal complaint against him, alleging two counts of malicious injury to dams, canals and other structures, a felony pursuant to I.C. § 18-7019. At the ex parte probable cause hearing held before the magistrate on June 8, 2000, Dodge represented the County. The court found probable cause that Ford had committed the offenses as charged. Dodge then requested that rather than issuing a summons, the court issue an arrest warrant for Ford along with a $100,000 bond. The magistrate asked Dodge why she was seeking an arrest warrant as well as a bond set in that amount. Dodge stated:
Your honor, one reason that we're seeking a warrant in this case is there has been an ongoing problem between Mr. Ford and Ms. Sherman. Our office has received numerous reports of confrontations between the two and we believe it's becoming a volatile situation.
We are seeking a warrant with the bond set in the amount of $100,000 and the reasons for that are numerous.
First, in one incident, an officer went out to investigate a complaint that he had received and Mr. Ford pulled a shotgun on him during that incident. Unfortunately, we were unable to charge because we were never able to recover the shotgun. During that same incident, Mr. Ford also charged the officer while riding his horse. He made comments to officers regarding this particular incident that's before the court that he understands the Sheriff's office has to do what they have to do but if they come to get him, they better come in force.
He also is a Canadian citizen and not a U.S. citizen so he has a visa here and although he has a business and a family here, we're concerned that he might potentially be a flight risk and go back to Canada where we wouldn't be able to locate him.
Dodge also stated:
We were also seeking a no-contact order between Mr. Ford and Susan Sherman. The reason for that is because this situation is becoming extremely volatile and we don't want to see anything happen between these two parties. And we would ask that that be included on the warrant.
The court then issued an arrest warrant with a bond in the sum of $50,000. In addition, the court ordered that if the bond were posted that there be a no-contact order between Ford and Sherman pursuant to I.C. § 18-920.
Actually, the incident Dodge spoke of in her comments to the magistrate when "Mr. *365 Ford pulled a shotgun on him during that incident" happened approximately seven months prior to this complaint concerning the welding of the headgates. In that first case, Ford was charged with aggravated assault of a police officer and obstructing and delaying a police officer. The officer's report in the first case says he was dispatched concerning a poaching incident in Nampa. A neighbor of Ford's had seen Ford go into the neighbor's field and shoot a goose. Because that portion of the land is part of the wildlife refuge, the neighbor contacted law enforcement. The officer's report concerning the shotgun is as follows:
I started to talk to Susan and noticed a man on a horse. Susan said the man on the horse was Dave Ford. Susan said he went on to Marty's property and shot twice at the goose. She said he missed the first time and hit the goose with the second shot. While I was talking to Susan, I noticed Dave on a horse coming over to the edge of the corral. I then saw Dave lean over the fence and grab something. I couldn't see what he grabbed but as he turned I could see a long gun. I told Dave I wanted to talk to him. Dave started to go the other direction. I started to walk toward the corral. Dave then took off on a horse. I yelled at Dave to stop a couple of times. I then advised dispatch Dave took off on a horse. I asked Todd to stay and get the information from Susan. Susan said Dave lived in the house right behind hers.
At the time this occurred the officer was approximately eighty-five yards away from Ford. The fact of the gun was never mentioned again.
In January 2000, Ford entered a plea of guilty to a misdemeanor charge of obstructing an officer and was given a withheld judgment. He also pled guilty to fish and game violations and paid a fine. At the time of sentencing, the sentencing judge asked Ford what had happened and he reiterated his story that he had seen the officer in the neighbor's yard after he had shot a wounded goose. He then picked up his shotgun and the goose and hid the shotgun in a trailer on his property and dropped the goose down a cistern to hide it. He then talked with the officers. Dodge was the prosecuting attorney in that case and was present at the sentencing hearing wherein Ford pled guilty to obstructing and delaying an officer as well as the fish and game violation.
In April 2001, Ford filed a complaint with the Idaho State Bar (ISB) against Canyon County Deputy Prosecuting Attorney Shari Dodge. A formal complaint was filed by the ISB on December 5, 2002, charging violations of Idaho Rules of Professional Conduct, 3.3(a)(1), 3.3(d), 3.8(a) and 8.4(c). Dodge filed an answer to the complaint on December 24, 2002. A hearing was held before the Professional Conduct Board on October 23, 2003. Ford and the magistrate judge were the only two witnesses. Dodge did not testify but instead stood on her unsworn letter to the ISB of October 9, 2001, which was entered as an exhibit. The matter was taken under advisement and Findings of Fact and Conclusions of Law were entered. By a two to one majority, the hearing committee found by clear and convincing evidence that Dodge had violated I.R.P.C. 3.3(a)(1) and 3.3(d) during her presentation to the magistrate judge.
Dodge appealed, and the matter is presently before this Court.
ISSUES ON APPEAL
1. Was the hearing committee's decision that Shari Dodge violated I.R.P.C. 3.3(a)(1) by knowingly making a false statement of material fact to the tribunal on June, 8, 2000, when she represented that David Ford "pulled a shotgun on" a police officer clearly erroneous, or arbitrary and capricious?
2. Was the hearing committee's decision that Shari Dodge violated I.R.P.C. 3.3(d) by failing to inform the tribunal on June 8, 2000, that the gun incident was wholly unrelated to the ongoing water dispute between David Ford and Susan Sherman clearly erroneous or arbitrary and capricious?
3. Does a judge's testimony in an attorney discipline matter that he was not misled by a prosecutor's comments at an ex parte probable cause hearing *366 and that the judge's decision would have been the same even with the relevant omitted information, relieve the prosecutor of her independent obligations under the Idaho Rules of Professional Conduct?
4. Will a public disciplinary sanction in this matter have a detrimental effect on the disclosure of information to judges in ex parte hearings?

STANDARD OF REVIEW
In an attorney discipline matter this Court reviews the hearing committee's decision to see if it was clearly erroneous or arbitrary and capricious. Wilhelm v. Idaho State Bar, 140 Idaho 30, 89 P.3d 870 (2004); Idaho State Bar Commission Rule 509(c)(9). When doing so, the Court independently examines the record developed before the Professional Conduct Board proceedings "to determine whether the evidence supports the findings and recommendations of the Board's hearing committee." Idaho State Bar v. Warrick, 137 Idaho 86, 90, 44 P.3d 1141, 1145 (2002). The hearing committee's findings are entitled to great weight, and the petitioner-attorney has the burden of showing the evidence does not support the hearing committee's findings. Idaho State Bar v. Malmin, 139 Idaho 304, 307, 78 P.3d 371, 374 (2003). The ultimate responsibility for assessing the facts and ordering the sanctions to be imposed, however, rests with the Supreme Court. Id. at 307-08, 78 P.3d at 374-75.

ANALYSIS

I. Was The Hearing Committee's Decision That Shari Dodge Violated Rule 3.3(a)1 Of The Idaho Rules Of Professional Conduct Clearly Erroneous?
The Court upholds the hearing committee's finding that Ms. Dodge violated Rule 3.3(a)(1) but on different grounds. The Court finds the hearing committee's decision clearly erroneous. In order to violate I.R.P.C. 3.3(a)(1) an attorney must "knowingly" make a false statement of fact or law to a tribunal. "Knowingly" denotes actual knowledge of the fact in question. I.R.P.C. 1.0(f). As always, knowledge may be proven by circumstantial evidence i.e. inferred from surrounding circumstances. Id.
Dodge's statement to the magistrate in which she asserted that Ford had "pulled a shotgun" on a Sheriff's deputy was false. In the incident Dodge referred to, Ford rode away from the deputy while carrying the shotgun, and did not brandish or point the weapon at anyone. Simply having or carrying a shotgun is significantly different from "pull[ing] a shotgun" on a law enforcement officer.
The hearing committee found by clear and convincing evidence that Dodge made a knowing misstatement of fact because she made no inquiry at all before alleging in court that Ford had "pulled a shotgun" on a sheriff's deputy. Dodge admits her statement was mistaken, however she maintains "it was not deliberate" on her part. The hearing committee found there was no evidence to rebut her assertion that she had not deliberately misstated the facts. Nevertheless, the hearing committee employed the analysis of a comment to I.R.P.C. 3.3 to find that by making no inquiry into the truth or falsity of her statement regarding the shotgun incident, Dodge "knowingly" misrepresented the facts. The hearing committee erred by not looking to the language of the Rule rather than the comment.
Dodge does not argue she did not know the underlying facts but instead contends her statement "was not deliberate on my part." The structure of the Code shows there is no need for an intent to deceive to violate I.R.P.C. 3.3(a)(1). Rule 8.4(c) states "it is unprofessional conduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation." This Court held in Idaho State Bar v. Malmin, 139 Idaho at 309, 78 P.3d at 375, and Warner v. Stewart, 129 Idaho 588, 595, 930 P.2d 1030, 1037 (1997), that clear and convincing evidence both of misrepresentation and the intent or purpose to deceive is needed to demonstrate a violation of the rule. Unlike Rule 3.3(a)(1), the application of Rule 8.4(c) is not limited to conduct before a tribunal and therefore is very broad. Rule 3.3(a)(1) states that a lawyer shall not knowingly make a *367 false statement of fact or law to a tribunal. "Knowingly" means actual knowledge of the fact in question and a person's knowledge may be inferred from circumstances. I.R.P.C. 1.0(f). To require an intent to deceive in Rule 3.3(a)(1) would be duplicative of Rule 8.4(c).
If an attorney does not know if an assertion is true or cannot point to a reasonably diligent inquiry to ascertain the truth of the statement, the attorney can remain silent, profess no knowledge, or couch the assertion in equivocal terms so the court can assess the assertion's probative value. The standard of affirming facts to the court cannot be the negligence standard, which is the argument presented to the Court by Dodge.
The finding by the hearing committee that there was no evidence to rebut Dodge's assertion her false statements were unintentional was clearly erroneous. First, Dodge did not testify before the hearing committee but instead presented an "unsworn" letter in her defense and therefore there was no chance for the hearing committee to judge her credibility. Even if the letter is taken as sworn testimony, it is clear Dodge had actual knowledge of the facts of the "goose" case. She was the handling attorney in the "goose" case so she had the probable cause statement where there was no mention of a gun being "pulled" on an officer. She participated in plea negotiations prior to the sentencing hearing. She was present at the sentencing hearing when it was explained by Ford exactly what happened, which was consistent with the officer's original probable cause report. The circumstances surrounding Dodge's statement show she knowingly misstated the facts to the magistrate, and therefore this Court upholds the finding that Dodge violated I.R.P.C. 3.3(a)(1).

II. Was Dodge's Statement Material?
When Dodge made her false representation to the court on June 8, 2000, I.R.P.C. 3.3(a)(1) prohibited false statements only if they were "material." I.R.P.C. 3.3(a)(1) (2000).[1] The rule at the time provided that "[a] lawyer shall not knowingly make a false statement of material fact or law to a tribunal." Id.
This Court has defined the test for materiality as whether
(a) a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question; or
(b) the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action, although a reasonable man would not so regard it.
Defendant A v. Idaho State Bar, 134 Idaho 338, 343, 2 P.3d 147, 152 (2000).
In his testimony to the hearing committee, the magistrate stated he was not misled by Dodge's allegedly false statements, and the allegedly false portions of those statements did not influence his ruling to grant an arrest warrant with a $50,000 bond. Dodge argues that because the magistrate was not misled and her false representations did not form the basis of his decision, her comments were therefore immaterial.
Contrary to Dodge's assertion, the magistrate's state of mind and the grounds he used in making his ruling are irrelevant to the question of materiality. As stated above, the test of materiality is whether (1) a "reasonable man would attach importance" to the statement, or (2) "the maker of the representation knows or has reason to know that its recipient" would regard the statement as important. Defendant A v. Idaho State Bar, 134 Idaho at 343, 2 P.3d at 152. Under neither option is any weight given to the state of mind of the recipient of the questioned statement  only the state of mind of the maker of the statement or of a "reasonable man" placed in the position of the recipient is relevant.
In reaching its decision, the hearing committee chose not to determine whether a "reasonable man" would have attached importance to Dodge's alleged falsehood. Instead, *368 the hearing committee simply noted that Dodge expected the magistrate might regard her statement about the shotgun incident as important, or otherwise she would not have brought the matter to the attention of the court. Indeed, without the allegation of "pull[ing] a shotgun," the court had only the argument regarding Ford's Canadian citizenship and an unsubstantiated allegation the situation was becoming "volatile" to provide grounds for the large $50,000 bond. Because the hearing committee found that Dodge, the speaker, had reason to know that the magistrate, the recipient, might regard the statement as important, the test of materiality was met.
As has been pointed out before, Dodge's intent was to try to get a felony warrant and a high bond against Ford at the probable cause hearing. The additional fact that Ford had "pulled a shotgun" on a law enforcement officer was very material to a high bond request. This Court affirms the hearing committee's finding as to the materiality of Dodge's falsehood.

III. Was The Hearing Committee's Decision That Dodge Violated I.R.P.C. 3.3(d) Clearly Erroneous Or Arbitrary And Capricious?
The hearing committee also found Dodge's statement concerning "pull [ing][a] shotgun" to have violated I.R.P.C. 3.3(d). This rule states that "[in] an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer which will enable the tribunal to make an informed decision, whether or not the facts are adverse." Specifically, the hearing committee found Dodge's failure "to inform the tribunal on June 8, 2000, that the gun incident was unrelated to the ongoing water dispute between Ford and Sherman" was an admission in violation of the rule.
The hearing committee's analysis focused on Dodge's testimony to the magistrate during the June 8, 2000, probable cause hearing.
First, in one incident, an officer went out to investigate a complaint that he had received and Mr. Ford pulled a shotgun on him during that incident. Unfortunately we were unable to charge because we were never able to recover the shotgun. During that same incident, Mr. Ford also charged the officer while riding his horse. He's made comments to officers regarding this particular incident that's before the Court that he understands the sheriff's office has to do what they have to do but if they come to get him, they better come in force. (Emphasis added.)
The hearing committee focused on the fact Dodge did not differentiate the two incidents and a reasonable person would believe Ford had pulled the gun during the water dispute. This Court finds the hearing committee's finding is clearly erroneous.
Throughout this portion of the discussion Dodge tried to differentiate Ford's conduct for the magistrate. She delineated the shotgun issue with the phrase "In one incident. ...." She then clearly connected the horse issue with the shotgun by the use of the phrase "During that same incident...." when referring to charging on the horse. She then differentiated the water incident by saying "regarding this particular incident that's before the court...."
The hearing committee found "[b]ecause the June 8, 2000, probable cause hearing was for a charge arising out of the ongoing water dispute between Ford and Sherman, the court should have been informed that the specific incident noted by the Defendant was not related to that dispute." We find the language "regarding the particular incident that's before the court...." did exactly that. The Court reverses the hearing committee's finding of a violation of I.R.P.C. 3.3(d).

IV. Chilling Effect.
Dodge argues that if she is disciplined in this matter it will have a chilling effect on prosecutors, discouraging them from providing relevant information to judges unless every detail can be exhaustively checked. She asserts that imposing unrealistic expectations on prosecutors may negatively effect public safety if judges are denied all the information they need to make important decisions.
In response, the ISB argues that as long as there are ethical rules directing lawyers on how to conduct themselves, there will be a *369 chilling effect from those rules. The argument continues that a ruling that one lawyer violated two rules under the particular facts of this case should not, any more than the rules already do, have a chilling effect on prosecutors. Further, the ISB contends it is not unrealistic to expect lawyers to "not knowingly make a false statement of material fact or law to a tribunal" or to "inform the tribunal of all material facts known to the lawyer" in an ex parte hearing as called for in I.R.P.C. 3.3.
Ultimately, the rules of professional conduct are designed to have a chilling effect, specifically on those types of behavior the rules seek to proscribe. Enforcing those rules may chill desirable behavior in some cases, but the consequences of not enforcing the rules must weigh heavily as well. It is not unrealistic to expect an attorney making a representation to the court purporting to come from personal knowledge to take reasonable steps to assure she is speaking truthfully. It is also not unrealistic to expect an attorney at an ex parte hearing to lay out all material facts, including those that are adverse to the attorney's position.
This Court declines Dodge's suggestion that prosecutors be held to a lower standard in providing complete and truthful information to the courts.

CONCLUSION
The Court upholds the hearing committee's finding that Dodge's assertion Ford had "pulled a shotgun" on a sheriff's deputy was a false statement of a material fact in violation of I.R.P.C. 3.3(a)(1). The Court reverses the hearing committee's finding of a violation of I.R.P.C. 3.3(d). Each party to bear their own costs.
Justices WALTERS, pro tem and KIDWELL, pro tem concur.
Justice EISMANN, concurring in Part III and dissenting as to Parts I, II, and IV.
At the time herein relevant, Rule 3.3(a) of the Idaho Rules of Professional Conduct (IRPC) provided, "A lawyer shall not knowingly: (1) make a false statement of material fact or law to a tribunal." There is no question that Dodge made a false statement of material fact to a tribunal when she told the magistrate judge that Mr. Ford had "pulled a shotgun" on a peace officer. That assertion was admittedly false, and Dodge certainly knew that such assertion was likely to be regarded as important to the magistrate judge when setting bail. The issue is whether the Bar proved by clear and convincing evidence that Dodge made that false statement knowingly.
The "Terminology" section of the former IRPC defined "knowingly" as "actual knowledge of the fact in question." For a false statement to have been made knowingly, the attorney must have lied.
The hearing committee did not find that Dodge had knowingly made a false statement. It found that she had negligently made a false statement by failing to first make a "reasonably diligent inquiry" as to the accuracy of the statement. Its key conclusions were as follows:
7. Rule 3.3(a)(1), IRPC, requires both that the lawyer knowingly make a false statement and that the false statement is material.

8. The Comment to Rule 3.3 clarifies the required knowledge: "However, an assertion purporting to be on the lawyer's own knowledge, as in an affidavit by the lawyer or in a statement in open court, may be properly made only when the lawyer knows the assertion is true or believes it to be true on the basis of a reasonably diligent inquiry."
9. The Defendant did not know that her statement regarding Mr. Ford pulling a gun on an officer was true, in fact it was admittedly false, and she made no inquiry at all before making that statement. Therefore, the Defendant "knowingly" made a false statement of fact to a tribunal.
The hearing committee clearly erred by using the wrong standard. Rather than finding that Dodge had knowingly made a false statement, it found that she had negligently made the false statement by failing to make a "reasonably diligent inquiry" before making the statement.
*370 The definition of "knowingly" in the former IRPC states, "A person's knowledge may be inferred from circumstances." The hearing committee certainly could have inferred from the facts that Dodge made the false statement knowingly. It did not do so, however. In fact, it found, "The Bar, in this case, has failed to establish by clear and convincing evidence that statements by the Defendant at the June 8, 2000, probable cause hearing were made with the intent or purpose to deceive."[2]
We must uphold the findings of the hearing committee unless they are clearly erroneous or arbitrary and capricious. Defendant A v. Idaho State Bar, 140 Idaho 800, 102 P.3d 1119 (2004). Findings of fact are not clearly erroneous simply because we would have drawn other inferences from the facts. Jones v. Big Lost River Irrigation Dist., 93 Idaho 227, 459 P.2d 1009 (1969). To determine whether Dodge made a knowingly false statement required a finding as to her intent when making the statement, Idaho State Bar v. Malmin, 139 Idaho 304, 78 P.3d 371 (2003), and that intent must necessarily be inferred from the facts and circumstances. The hearing committee gave credence to Dodge's explanation and did not infer the necessary intent. Its failure to infer such intent was not clearly erroneous. Although Dodge's conduct was certainly unprofessional and exhibited a lack of sensitivity to the rights of the accused, the hearing committee could reasonably find that she did not knowingly make a false statement.
Chief Justice SCHROEDER concurs.
NOTES
[1] Amended in 2004, Idaho Rule of Professional Conduct 3.3(a)(1) presently disallows any knowingly false statement. "Materiality" is a necessary element only if a lawyer is accused of neglecting to correct a statement after learning of its falsehood. I.R.P.C. 3.3(a)(1).
[2] In this case, a misrepresentation made with an intent to deceive and a knowingly false statement are synonymous. There was no contention that the false statement was made as a joke or without any intent that the magistrate judge would rely upon it. A person who makes a knowingly false statement of material fact to a court with the intent that the court rely upon that statement has also made a misrepresentation with the intent to deceive. Idaho State Bar v. Williams, 126 Idaho 839, 893 P.2d 202 (1995). See also, Idaho State Bar v. Malmin, 139 Idaho 304, 78 P.3d 371 (2003), where the making of "knowingly false statements" was held to be the making of misrepresentations with "the intent or purpose to deceive."