129 P.3d 1251

**In the Matter of John C. Souza, Attorney at Law.**

**IDAHO STATE BAR, Plaintiff–Petitioner,**

v.

**John C. SOUZA, Defendant–Respondent.**

No. 31804.

Supreme Court of Idaho, Boise, December 2005 Term.

Feb. 2, 2006.

504

Bradley G. Andrews, Idaho State Bar Counsel, Boise, for petitioner. Julia A. Crossland argued.

Ronald J. Jarman, Pocatello, argued for respondent.

BURDICK, Justice.

This is an attorney discipline case. The Idaho State Bar (ISB) filed a formal complaint against John Souza (Souza) charging four counts of misconduct related to his representation of Allen Black (Black). ISB and Souza entered into a stipulation for discipline and ask that this Court adopt it as the full and final resolution of the formal charges. We decline and impose a different sanction.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Black hired Souza to represent him in a personal injury claim relating to injuries he received in a car accident. Black then informed the tortfeasor driver's insurer, State Farm, that Souza was representing him. State Farm contacted Souza requesting medical bills and reports for Black so that it could conduct an independent medical exam. Souza sent State Farm the medical bills, but despite repeated requests he failed to send medical reports for almost a year. State Farm requested additional medical records and advised Souza that Black's bills would not be paid until State Farm could evaluate the claim and had a report indicating why the company should pay—an action that could not be completed without the additional medical records.

Nearly two years after Black suffered injuries in the car accident State Farm was able to conduct an independent medical examination and evaluate the claim. However, Souza did not respond to their settlement attempts. The month prior to the statute of limitations running, State Farm called Souza advising him to file a complaint to preserve the suit. Souza then extended a settlement offer, and State Farm counter-offered the day prior to the statute running. State Farm mailed Souza a letter confirming the counter-offer the day after the statute ran, but Souza failed to respond and the counter offer was subsequently withdrawn. Souza then filed a complaint three days after the statute of limitations expired. This complaint was dismissed, but Souza did not object or attend the hearing on the motion to dismiss.

Additionally, almost a year after the accident, Souza advised Black and his wife to file for Chapter 13 bankruptcy since they could not pay the medical providers, and Souza collected a fee to do this. A few months later, the Black's mortgage company served them with foreclosure papers which the Blacks took to Souza. Souza told them that he would take care of it. However, the Blacks were once again served with foreclosure papers, advising them that the foreclosure would take place in twenty days. They called Souza's office and were told that the bankruptcy petition was nearly ready to be filed. The Blacks believed that it had been filed nine months earlier. Souza did file the petition nearly nine months after collecting the fee.

When Souza began representing the Blacks in the personal injury case, Black contacted Souza's office nearly every day, but Souza would not return his calls for weeks. More than once Souza told Black that the complaint had been filed and not to worry. Souza never informed Black that he had

failed to timely file the suit and that it had been dismissed. In fact, even after the dismissal, Souza continued to represent that the suit was proceeding. Black finally learned the true course of events when he called State Farm ten months after the dismissal.

Shortly after learning of this, Black filed a complaint against Souza with the ISB. ISB investigated these charges and the Board of Commissioners approved the filing of formal charges. ISB filed a four count complaint against Souza. Count I of the complaint charges violations of I.R.P.C. 1.1 and 1.3 for failure to timely file the personal injury lawsuit and communicate with Black. Count II charges violations of I.R.P.C. 1.4 and 8.4(c) for falsely misleading Black about the personal injury suit. Count III charges violations of I.R.P.C. 1.3 and 8.4(c) for failing to diligently pursue filing the bankruptcy petition and falsely misleading Black about the filing date. Count IV charges violations of I.R.P.C. 4.1(a), 5.3 and 8.4(c) for Souza's secretary falsely informing one of Black's medical providers that the claim was progressing and that settlement would soon be reached.

After discovery, Souza and ISB entered into a stipulation wherein Souza admitted the allegations in Counts I through III, and Count IV was dismissed for lack of clear and convincing evidence. The stipulation also acknowledged that Souza had been disciplined in the past. As part of the resolution of this complaint, Souza agreed to pay Black $17,500 in restitution from his personal funds. Souza also agreed to serve a 365–day suspension with 273 days withheld, and that he then be on probation for one year. In order to be reinstated after his ninety-two day suspension, Souza and ISB also stipulated that he must carry acceptable errors and omissions insurance. Souza must also demonstrate that he will comply with the terms of his probation, namely: that he will not violate any of the Idaho Rules of Professional Conduct, continue to carry errors and omissions insurance, make arrangements for a supervising attorney to supervise Souza's law practice to whom Souza will make monthly reports and who will make quarterly reports to ISB regarding Souza's compliance, and certify under oath on a monthly basis that he is acting toward his clients consistent with his responsibilities under the Idaho Rules of Professional Conduct.

ISB then submitted the stipulation to the Professional Conduct Board, and the Board recommended that the Court adopt the conditions of the stipulation as full and final resolution of the formal charges. This case comes to the Court from that order and recommendation.

## II. STANDARD OF REVIEW

■ Attorney discipline matters are judicial in nature, rather than administrative, and the responsibility for assessing facts and ordering sanctions rests with this Court. *Idaho State Bar v. Frazier,* 136 Idaho 22, 30, 28 P.3d 363, 371 (2001). This Court reviews an attorney discipline action independently to determine if the record developed before the Professional Conduct Board supports the findings and recommendations. *Idaho State Bar v. Warrick,* 137 Idaho 86, 90, 44 P.3d 1141, 1145 (2002). The purpose behind attorney discipline is to protect the public from those unfit to practice law and to deter future misconduct; the purpose is not punitive. *See, e.g., Frazier,* 136 Idaho at 30, 28 P.3d at 371. Sanctions should be imposed on a case by case basis and the Court should reach "the result best suited for the individual, the bar, and the public." *Id.* When crafting sanctions the Court must review all relevant factors "including the nature of the violation, mitigating and aggravating circumstances, the need to protect the public, the courts and the legal profession and the moral fitness of the attorney." *Id.*

## III. ANALYSIS

■ All attorney discipline cases require a two step analysis. First, the Court must determine whether the record supports the findings and recommendations, then it must independently determine the sanctions warranted by the facts of the case.

### A. Substantial and Competent Evidence

■ "In an attorney discipline case, the Idaho State Bar must establish charges of

misconduct by clear and convincing evidence." *Idaho State Bar v. Tway*, 128 Idaho 794, 797, 919 P.2d 323, 326 (1996). The Supreme Court independently examines the record to determine if the evidence supports the findings and recommendations. *Idaho State Bar v. Gantenbein*, 133 Idaho 316, 319, 986 P.2d 339, 342 (1999).

Here, Souza admitted to violating I.R.P.C. 1.1, 1.3, 1.4, and 8.4(c), and it is undisputed that the record supports the Professional Conduct Board's findings. ISB deposed Souza, and his testimony establishes the existence of aggravating and mitigating circumstances. However, in determining what discipline is appropriate the Court must review Souza's conduct in light of all the relevant factors. *See Gantenbein*, 133 Idaho at 319, 986 P.2d at 342.

### B. Aggravating and Mitigating Factors

■ "Although the Court places great weight on the findings and recommendations of the hearing committee regarding sanctions, 'it is ultimately the responsibility of this Court to determine the sanctions available' to the ISB." *Frazier*, 136 Idaho at 30, 28 P.3d at 371 (*quoting Idaho State Bar v. Tway*, 128 Idaho 794, 799, 919 P.2d 323, 328 (1996)). This Court must consider the nature of the violations, mitigating and aggravating circumstances, the need to protect the public, the courts and the legal profession, and the moral fitness of the attorney. *See, e.g., Gantenbein*, 133 Idaho at 319, 986 P.2d at 342.

In its brief to this Court, ISB set out the factors it employed in determining the appropriate sanction in this case. The aggravating factors included Souza's prior disciplinary offenses and his long experience in the practice of law[1]—in light of which he could hardly have been ignorant of his ethical responsibilities. The mitigating factors considered by the ISB included: (1) the absence of a dishonest or selfish motive; (2) timely good faith efforts to make restitution or to rectify the consequences of his misconduct; (3) full and free disclosure to the disciplinary board or cooperative attitude toward the proceedings; (4) remorse; and (5) the remoteness of certain of his prior offenses. Likewise, the Court considered these factors when determining the appropriate sanctions.

■ However, in addition to these factors, the Court also takes into account the impact of Souza's misconduct on Black. Souza's long failure to forward records to State Farm forced Black to contend with mounting medical bills on his own. For two years Souza inexplicably failed to move Black's personal injury suit forward—denying Black needed resources during a time when he and his wife lost their jobs and faced personal bankruptcy. Souza cannot have been unaware of Black's plight—he even collected a fee to handle Black's bankruptcy, and delayed filing that action for nine months. Throughout Souza's representation, Black attempted to contact him again and again. When Souza chose to respond, he offered only false assurances that action was being taken.

The harm suffered by Black as a result of Souza's conduct goes beyond simple monetary loss. Souza was hired to serve as Black's representative and champion. Souza could have intervened at any point during Black's struggles, but he did not. Indeed, Black did not learn the window for filing his personal injury action had finally closed until months afterwards, and then only from State Farm. Black's long, frustrating wait for Sousa to take action had been for nothing. Souza never even argued against the dismissal of the personal injury case.

■ A lawyer has many responsibilities, but his responsibilities to his client are chief among them. It is appropriate in attorney discipline cases to consider as an aggravating factor the degree of harm suffered by the client. Here, after consideration of the harm Souza's conduct inflicted on his client, as well as other aggravating and mitigating factors, we see that the sanctions agreed to by Souza and the ISB are inadequate in this case. They fail to take into account the gravity of Souza's offenses and his pattern of violating the same ethical duties.

There is benefit to looking at what this Court has done in the past in assessing ap-

---

1. Souza was admitted to practice in 1976.

propriate sanctions in this case. In *Idaho State Bar v. Malmin*, the client, Hill, hired Malmin to file a money judgment against Hill's ex-husband. 139 Idaho 304, 305–06, 78 P.3d 371, 372–73 (2003). Malmin neglected to file the papers for six months. *Id.* at 306, 78 P.3d at 373. She also told Hill that the papers had been filed, when they had not. *Id.* When Hill discovered the delay, she requested a refund from Malmin; Malmin refused, instead agreeing to waive her fee for drafting wage garnishment papers. *Id.* After Hill completed the wage garnishment papers, she received a bill from Malmin for their preparation. *Id.* Malmin received a six-month suspension and two-year probation, in part because she knowingly made false statements to ISB during their investigation, failed to take responsibility for her actions and failed to demonstrated "an appreciation of the serious nature of her misconduct." *Id.* at 312, 78 P.3d at 379.

In *In re Daw*, Daw was appointed as a public defender for Baxter for various drug related felonies. 128 Idaho 80, 81, 910 P.2d 752, 753 (1996). When Baxter was served with civil forfeiture papers and delivered them to Daw, Daw failed to take any action and default was entered against Baxter. *Id.* at 81–82, 910 P.2 at 753–54. Daw claimed the default was due to secretarial error, but took no action to have it set aside. *Id.* at 82, 910 P.2d at 754. ISB requested a ninety-day suspension before the hearing committee, "based upon Daw's substantially similar conduct with another client during the same time period." *Id.* at 85, 910 P.2d at 756. This Court noted that Daw's ethical lapses in the two cases "clearly represent a disturbing pattern on Daw's part of making decisions that directly impact a client's rights or interest without previously, or even after the fact, notifying them of such." *Id.* at 86, 910 P.2d at 758. In the end, however, the Court noted that while the ninety-day sanction was in line with sanctions imposed in similar cases, Daw had already implemented modifications in his practice to ensure proper client communication and placed Daw on probation. *Id.*

In *Idaho State Bar v. Matthews*, the Pattersons hired Matthews to file a bankruptcy petition on their behalf, but when the bank-ruptcy trustee objected to the claimed homestead exemption, Matthews did not respond. 128 Idaho 39, 39, 910 P.2d 153, 153 (1994). Matthews also failed to respond when the trustee informed him that he intended to liquidate the property for its equity and that the Patterson's failure to cooperate would result in the revocation of their bankruptcy discharge. *Id.* Matthews only took action in the case when the trustee filed a complaint to revoke the Patterson's discharge. *Id.* The hearing committee found that Matthews had failed to diligently represent the Pattersons, made false and misleading statements to the Pattersons and made materially false statements in the disciplinary proceeding. *Id.* at 40, 910 P.2d at 154. However, in light of these findings, this Court concluded that the recommendation of a withheld ninety-day suspension was not adequate to meet the goals of protecting the public and the legal profession and encouraging public confidence in the disciplinary process. *Id.* Instead, this Court imposed a ninety-day suspension and ordered Matthews to pay restitution to the Pattersons. *Id.*

Here, Souza's misconduct and the consequences of his misconduct are much more grave than the consequences in *Malmin, Daw* or *Matthews*. Additionally, like in *Daw*, Souza's conduct shows a disturbing pattern of repeated ethical violations, a factor which does not seem to be reflected in ISB's recommendation. Indeed, in its brief, ISB claims that Souza's ethical violations are remote in time; however, Souza was reprimanded in 2001 for violations of I.R.P.C. 1.3, 1.4, and 8.4(c). These are three of the four provisions which Souza has admitted violating in this instance. Unlike in *Daw*, there is absolutely no showing that Souza has instituted any measures which help ensure that his repeated ethical violations will not occur again.

In this instance, there are mitigating factors. ISB found that Souza lacked a dishonest or selfish motive. Souza cooperated with ISB, showed remorse for his actions, and made a timely good faith effort to make restitution out of his own personal funds. However, given the dramatic consequences of Souza's misconduct in this instance, his pat-

tern of repeated ethical violations with no indications that they will not continue in the future, the recommended suspension is not an adequate sanction in light of the goals of protecting the public and the legal profession and encouraging public confidence in the disciplinary process.

## IV.  SANCTIONS

■■■ As a result of Souza's violations of I.R.P.C. 1.1, 1.3, 1.4, and 8.4(c), we order that Souza be suspended for thirty-six months with thirty months withheld.  Following the six-month actual suspension, Souza may apply for reinstatement under Idaho Bar Commission Rule 518.  In addition to the showing required under that rule, Souza must also show that he has obtained errors and omissions legal malpractice insurance providing minimum coverage in an amount and form acceptable to the Professional Conduct Board and that ISB must be notified in writing by the insurance carrier of any changes to that policy.

Following reinstatement by the Professional Conduct Board, Souza will be subject to the following terms and conditions of probation for the remainder of his withheld suspension.  Any failure to comply with the terms and conditions of his probation will be grounds for imposition of the remaining thirty months withheld suspension, even if proven after the completion of the probationary period.

1.  Souza must not violate any of the Idaho Rules of Professional Conduct.  Souza must maintain errors and omissions legal malpractice insurane throughout the probationary period, providing coverage in a form acceptable to the Professional Conduct Board, and will ensure that the insurance carrier notify the Professional Conduct Board directly of any changes to that policy.

2.  Souza must also make arrangements for a supervising attorney, satisfactory to ISB, who will supervise Souza during probation.  This supervising attorney shall not be expected to assume any personal responsibility for the handling of Souza's cases, nor serve as a co-lawyer.  However, the supervising attorney and Souza shall meet at least monthly to ensure that Souza is acting with reasonable diligence and promptness in representing his clients, that Souza is keeping his clients reasonably informed about the status of their matters and that Souza is promptly complying with any reasonable request for information about his representation of clients.  The supervising attorney shall report quarterly to ISB that Souza is arranging to meet with the supervising attorney on at least a monthly basis and that Souza is complying with all the conditions of probation.

3.  Souza shall notify ISB monthly, in writing and under oath, that he is acting with reasonable diligence and promptness in representing his clients, is keeping his clients reasonably informed about the status of their matters, is promptly complying with reasonable requests for information about his representation of clients and is representing his clients consistent with his responsibilities under the Idaho Rules of Professional Conduct.

Additionally, Souza shall tender to ISB, for Black's benefit, the full amount of State Farm's settlement offer ($22,000) plus the legal rate of interest from the date of that offer.[2]  He is granted credit for any sums previously paid to the Blacks.

## V.  CONCLUSION

The findings that Souza violated I.R.P.C. 1.1, 1.3, 1.4 and 8.4(c) are supported by substantial and competent evidence.  Souza is suspended from the practice of law for thirty-six months; after six-months he may apply for reinstatement pursuant to I.B.C.R. 518.  He shall not be reinstated unless he complies with the above conditions.  Additionally, Souza shall be on probation for the remaining thirty months, during which time any violation of the conditions set out by this Court shall result in the imposition of the remaining thirty months withheld suspension, even if proven after the completion of

---

**2.**  Interest is to be calculated on the State Farm offer from the date of that offer to the time of partial payment of $17,500.00, and then upon the difference until the date of payment.

the probationary period. Souza shall tender to ISB, for Black's benefit, the full amount of State Farm's settlement offer, plus the legal rate of interest. No costs or attorney fees on appeal.

Chief Justice SCHROEDER and Justices TROUT, EISMANN and JONES concur.

